UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JPMORGAN CHASE BANK,<br>NATIONAL ASSOCIATION,<br>1111 Polaris Parkway,<br>Columbus, Ohio 43240,<br><br>                    Plaintiff,<br><br>          v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, in its capacity as<br>Receiver for Washington Mutual Bank,<br>550 17th Street N.W.,<br>Washington, D.C. 20429,<br><br>          – and –<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, in its corporate capacity,<br>550 17th Street N.W.,<br>Washington, D.C. 20429,<br><br>                    Defendants. | Case No. _____ |

## COMPLAINT

JPMorgan Chase Bank, National Association ("JPMC"), by and through its attorneys, Sullivan & Cromwell LLP, alleges on knowledge as to itself and its conduct and upon information and belief as to all other matters as follows:

## NATURE OF ACTION

1.     JPMC brings this action to recover substantially in excess of a billion dollars in indemnification from the Federal Deposit Insurance Corporation in its capacity as Receiver for Washington Mutual Bank ("WMB") (the "FDIC-Receiver") under the terms of the Purchase & Assumption Agreement between JPMC, the FDIC-Receiver, and the Federal Deposit

Insurance Corporation in its corporate capacity ("FDIC-Corporate", and collectively with FDIC-Receiver, the "FDIC"), dated as of September 25, 2008 (the "P&A Agreement" or "P&A"), pursuant to which JPMC acquired from the FDIC-Receiver essentially all of the assets and assumed certain liabilities of WMB. As described more fully below, the FDIC-Receiver has wrongly refused to acknowledge or honor its expansive indemnification obligations to JPMC under the P&A Agreement and in doing so has subjected JPMC to massive liability.

2. The FDIC's indemnification obligations that are the subject of this action are a matter of contract. They are promises that the FDIC made to JPMC to induce JPMC to enter into the P&A Agreement when WMB failed in September 2008, in the largest bank failure in this nation's history. By entering into the P&A Agreement and agreeing to assume WMB's enormous deposit liabilities, JPMC protected the FDIC from potentially unprecedented liability and helped ensure the stability of the country's banking system by enabling the former WMB branches to remain open for business as usual following the failure.

3. The FDIC-Receiver bears the primary responsibility to indemnify JPMC. Its indemnification obligations to JPMC are paid out of existing assets held in the WMB receivership, not borne by taxpayers or depositors. Following resolution of JPMC's indemnification claims, any amounts remaining in the WMB receivership would be paid out to WMB creditors, primarily to holders of WMB senior debt, a group currently constituted mainly of hedge funds and similar entities that have bought up WMB senior debt for pennies on the dollar. FDIC-Corporate acts as a guarantor of the FDIC-Receiver's indemnification obligations to JPMC under the P&A Agreement; however, JPMC believes that the FDIC-Receiver has sufficient assets to meet the existing indemnification obligations that are the subject of this action

-2-

and that, if the FDIC-Receiver does so, it will not be required to call upon FDIC-Corporate's guarantee.

4.     The FDIC's indemnification obligations that are the subject of this action are in addition to the obligations that the FDIC has to indemnify JPMC for any liability it may incur with respect to the multi-billion dollar mortgage-backed securities repurchase claims being asserted in the *Deutsche Bank* v. *FDIC* action in this Court (Civil Action No. 09-cv-1656), for the various tax claims that are already the subject of other litigation between JPMC and the FDIC, and for other claims in litigation where JPMC has asserted third-party claims against the FDIC. The indemnification obligations that are the subject of this action are not exhaustive of JPMC's indemnification rights under the P&A Agreement, and JPMC reserves the right to demand indemnification from the FDIC under the P&A Agreement for matters that are not the subject of this complaint.

## PARTIES

5.     Plaintiff JPMC is a national banking association organized under the laws of the United States of America with its principal place of business in Columbus, Ohio. JPMC is the "Assuming Bank" as that term is defined in the P&A Agreement.

6.     Defendant FDIC-Receiver is a federal corporation organized under the laws of the United States of America with its principal place of business in the District of Columbia. Defendant FDIC-Corporate is a federal corporation organized under the laws of the United States of America with its principal place of business in the District of Columbia. Defendants FDIC-Receiver and FDIC-Corporate are the same federal corporation but claim to act, including entering into contracts and suing and being sued, in separate capacities. Both the FDIC-Receiver and FDIC-Corporate are parties to the P&A Agreement.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 12 U.S.C.

§ 1819(a)(Fourth) and (b)(2)(A) and 28 U.S.C. §§ 1331, 1332(a)(1), 2201, and 2202.

8.      Venue of this action is proper in this Court pursuant to 28 U.S.C.

§ 1391(b)(1), (b)(2), and (e).

## UNDERLYING FACTS

### I.      The P&A Agreement

9.      On September 25, 2008, the Office of Thrift Supervision closed WMB and

appointed the FDIC-Receiver as its receiver.

10.     That same day, JPMC, the FDIC-Receiver, and FDIC-Corporate entered

into the P&A Agreement, under which JPMC purchased essentially all of the assets and assumed

certain specified liabilities of WMB.

11.     While JPMC acquired the FDIC's title to all of the assets of WMB,

"whether or not reflected on the books of" WMB (P&A § 3.1), JPMC did not assume all of the

liabilities of WMB, but rather assumed only an expressly defined subset of them.  The P&A

Agreement provides that JPMC "expressly" assumed "at Book Value . . . all of the liabilities of

the Failed Bank [WMB] which are reflected on the Books and Records of the Failed Bank as of

Bank Closing [September 25, 2008]."  (*Id.* § 2.1.)   Therefore, with certain explicit exceptions

not relevant here, JPMC did not assume any liability of WMB that was not reflected on WMB's

general ledger, subsidiary ledgers, and supporting schedules as of September 25, 2008.

12.     Under the terms of the P&A Agreement, the FDIC-Receiver broadly

agreed to indemnify JPMC both for liabilities JPMC did not assume and for numerous other

matters, regardless of whether JPMC did or did not "assume" them.

-4-

13.    The scope of the FDIC-Receiver's indemnification obligations are set forth in Article XII of the P&A Agreement.  Specifically, with exceptions not relevant here, the FDIC-Receiver agreed to indemnify JPMC for, among other things, "any and all costs, losses, liabilities, expenses (including attorneys' fees) . . . , judgments, fines and amounts paid in settlement actually and reasonably incurred in connection with claims against [JPMC]" insofar as they are:

- "based on liabilities of [WMB] that are not assumed by [JPMC] pursuant to this Agreement."  (P&A § 12.1.)

- "based on any action or inaction prior to Bank Closing of the Failed Bank, its directors, officers, employees or agents as such, or any Subsidiary or Affiliate of the Failed Bank, or the directors, officers, employees or agents as such of such Subsidiary or Affiliate." (*Id.* § 12.1(a)(4).)

- "based on the rights of any creditor as such of the Failed Bank, or any creditor as such of any director, officer, employee or agent of the Failed Bank or any Affiliate of the Failed Bank, with respect to any indebtedness or other obligation of the Failed Bank or any Affiliate of the Failed Bank arising prior to Bank Closing."  (*Id.* § 12.1(a)(2).)

14.    The only relevant exception to the FDIC-Receiver's indemnification obligation is for claims with respect to liabilities that JPMC "expressly assumed" under the P&A Agreement.  (*Id.* § 12.1(b)(2).)  However, because JPMC did not "expressly assume[ ]" any of the liabilities that are the subject of this action, this exception does not apply here.

15.    The FDIC-Receiver also undertook to indemnify JPMC up to a limit of $500 million for claims asserted directly or derivatively on behalf of WMB's parent, Washington

Mutual Inc. ("WMI"), "based on the process of bidding, negotiation, execution and consummation of the transaction contemplated by [the P&A Agreement.]" (*Id.* § 12.1(a)(9).)

16.     Under the P&A Agreement, the FDIC-Receiver's obligation to indemnify JPMC has priority over the FDIC-Receiver's obligations to any creditors of the receivership, including holders of WMB senior debt. Thus, all of the assets of the WMB receivership are available to meet the FDIC's indemnification obligations to JPMC under the P&A Agreement, even if those obligations deplete or exhaust the assets available to meet the claims of other receivership creditors.

17.     In Section 12.7 of the P&A Agreement, FDIC-Corporate guarantees the FDIC-Receiver's indemnification obligations to JPMC, committing itself to pay any amounts that the FDIC-Receiver is obligated to pay under Article XII of the P&A Agreement but fails to pay.

18.     The vast majority of the indemnification obligations at issue here arose because the FDIC-Receiver declined to acknowledge that the claims against JPMC for WMB's pre-receivership conduct should have been claims against the receivership. Had the FDIC-Receiver acknowledged that the claims were properly against the receivership, not JPMC, then those claims would have been paid *pro rata* out of the receivership's assets according to the priority distribution scheme applicable there, with no recourse to FDIC-Corporate. Because the FDIC-Receiver did not do so, though, it has brought into play the FDIC-Corporate's contractual commitment to backstop the FDIC-Receiver's indemnification obligations.

19.     JPMC understands the assets of the WMB receivership are currently about $2.75 billion. Those assets should be sufficient to satisfy JPMC's indemnification claims that are the subject of this action in light of the amounts that JPMC has paid to date. Moreover, the

FDIC-Receiver could limit the accrual of further indemnification obligations, and thus make it more likely that FDIC-Corporate's guarantee may never be necessary, by acknowledging that the outstanding claims described below based on WMB's pre-receivership conduct are claims against the WMB receivership.

20.     The FDIC's obligations to JPMC under Article XII of the P&A are not claims that must be filed in the WMB receivership. The FDIC has confirmed this point to JPMC in writing. Rather, JPMC's rights against the FDIC under Article XII of the P&A Agreement are contractual obligations owed by the FDIC directly to JPMC that may be enforced directly in this Court.

## II.     The FDIC's Indemnification Obligations

21.     Since entering into the P&A Agreement, JPMC has incurred substantial liabilities with respect to claims that trigger the FDIC-Receiver's indemnification obligations under Section 12.1 of the P&A. While these claims are numerous, the most substantial ones fall into several broad categories, as summarized below. JPMC has had numerous communications with the FDIC about these claims or categories of claims, and has requested that the FDIC-Receiver honor its indemnification obligations, but the FDIC-Receiver to date has not honored any of them.

22.     JPMC has complied with its material obligations under the P&A Agreement, except for any obligations for which compliance is excused, and has satisfied any conditions precedent to indemnification. The FDIC-Receiver has acknowledged before this Court that its refusal to accept responsibility for WMB liabilities would, if those liabilities are determined to have remained with it and not transferred to JPMC, excuse JPMC's inability to

comply with certain conditions precedent to indemnification in the P&A, such as those requiring the FDIC-Receiver's consent to certain actions.

23.    The indemnification claims that are included in this complaint are not exhaustive of JPMC's indemnification rights and are without prejudice to JPMC's right to assert and/or enforce additional indemnification rights against the FDIC-Receiver and FDIC-Corporate.

### A.    GSE Repurchase Payments

24.    In or about October 2008, the Federal National Mortgage Association ("Fannie Mae") demanded that JPMC commit to repurchase loans sold by WMB to Fannie Mae to the extent the loans breached representations and warranties that WMB made in connection with the sale of those loans to Fannie Mae.

25.    In or about November 2008, the Federal Home Loan Mortgage Corporation ("Freddie Mac", and together with Fannie Mae, the "GSEs") similarly demanded that JPMC commit to repurchase loans WMB sold to Freddie Mac to the extent the loans breached representations and warranties that WMB made to Freddie Mac in connection with the sale of those loans.

26.    Unbeknownst to JPMC at the time, the FDIC was secretly working behind the scenes to assist the GSEs and to impose these liabilities, unnecessarily, on JPMC.

27.    Although WMB was both the original seller of the loans that were the subject of its agreements with the GSEs and, at the time of its failure, the servicer of those loans, the obligations of seller and servicer are distinct.  To the extent the servicer repurchases any loans in the first instance from the GSEs because of breaches of representations and warranties associated with the sale of those loans, the servicer has recourse against the seller.

28.    JPMC entered into settlements with Fannie Mae and Freddie Mac to resolve their claims relating to breaches of representations and warranties made by WMB in

connection with WMB's sale of those loans.  All of those sales by WMB took place prior to the receivership.

29.     JPMC is entitled to indemnification under the P&A Agreement for the settlement amounts paid to Fannie Mae and Freddie Mac, as well as all costs and fees incurred in connection with the disputes and demands that resulted in the settlements.

### B.     RMBS Securities/Misrepresentation Claims

30.     Since entering into the P&A Agreement, JPMC has been subject to numerous lawsuits and other claims in which purchasers of residential mortgage backed securities ("RMBS") have alleged that WMB, pre-receivership subsidiaries of WMB, and/or officers, directors, employees and agents of WMB and its subsidiaries, made misrepresentations and/or failed to disclose material facts in connection with numerous WaMu and Long Beach Mortgage Corp. ("Long Beach") securitizations, including alleged misrepresentations about loans being securitized and the manner and standards by which they were originated (each, a "Securities Claim").

31.     The Securities Claims for which JPMC is entitled to indemnification include the following litigations to the extent they are based upon WaMu and/or Long Beach RMBS securitizations:

a.  *Allstate Bank* v. *JPMorgan Chase Bank, N.A., et al.*, commenced on or about February 15, 2011, in New York State Supreme Court and subsequently removed to the United States District Court for the Southern District of New York, Case No. 11-cv-01869.  This Securities Claim has been settled.

b.  *Asset Management Fund* v. *JPMorgan Chase & Co., et al.*, commenced on or about February 1, 2012 in New York State Supreme Court, Case No. 650320/2012.  This Securities Claim has been settled.

c. *Bank Hapoalim* v. *JPMorgan Chase & Co., et al.*, commenced in New York State Supreme Court on or about May 28, 2012, Case No. 652799/2012. This Securities Claim has been settled.

d. *Bayerische Landesbank* v. *Bear Stearns & Co., Inc., et al.*, commenced on or about November 21, 2011 in New York State Supreme Court, Case No. 653239/2011. This Securities Claim has been settled.

e. *Cambridge Place Investment Management Inc.* v. *Morgan Stanley & Co., Inc., et al.*, commenced on or about July 9, 2010 in Massachusetts Superior Court, Case No. 10-2741. This Securities Claim has been settled.

f. *CMFG Life Insurance Company* v. *J.P. Morgan Securities, LLC, et al.*, commenced on or about August 15, 2013, in the United States District Court for the Western District of Wisconsin, Case No. 13-cv-580. This Securities Claim has not been settled.

g. *Deutsche Zentral-Genossenschaftsbank AG* v. *JPMorgan Chase & Co., et al.*, commenced on or about August 3, 2012 in New York State Supreme Court, Case No. 650293/2012. This Securities Claim has been settled.

h. *Dexia SA/NV* v. *Bear Stearns & Co.*, commenced on or about January 19, 2012 in New York State Supreme Court, Case No. 650180/2012, and subsequently removed to the United States District Court for the Southern District of New York. This Securities Claim has not been settled.

i. *Federal Home Loan Bank of Boston* v. *Ally Financial, Inc., et al.*, commenced on or about April 20, 2011 in the Superior Court of Massachusetts, Case No. 11-1533, and subsequently removed to the United States District Court for the District of Massachusetts, Case No. 11-cv-10952. This Securities Claim has not been settled.

j.  *Federal Home Loan Bank of Chicago* v. *Banc of America Securities, et al.*, commenced on or about October 15, 2010 in the Washington Superior Court, King County, Case No. 10-2-36526-5.  This Securities Claim has been settled.

k.  *Federal Home Loan Bank of Indianapolis* v. *Banc of America Mortgage Securities, Inc., et al.*, commenced on or about October 15, 2010 in Indiana Superior Court, Marion County.  This Securities Claim has not been settled.

l.  *Federal Home Loan Bank of San Francisco* v. *Deutsche Bank Securities, Inc., et al.*, commenced on or about March 15, 2010 in California Superior Court, San Francisco County, Case No. 10-497839.  This Securities Claim has not been settled.

m.  *HSH Nordbank AG, et al.* v. *JPMorgan Chase Bank, N.A., et al.*, commenced on or about August 31, 2011 in New York State Supreme Court, Case No. 652416/2011.  This Securities Claim has been settled.

n.  *In re Washington Mutual Mortgage Backed Securities Litigation*, commenced on or about January 12, 2009 as a class action by Boilermakers National Annuity Trust Fund and Doral Bank, Puerto Rico, in the United States District Court for the Western District of Washington, Case No. 2:09-cv-00037.  This Securities Claim has been settled.

o.  *Landesbank Baden-Wurttemberg* v. *Bear Stearns & Co., Inc., et al.*, commenced on or about September 29, 2011 in New York State Supreme Court, Case No. 652680/2011.  This Securities Claim has been settled.

p.  *Massachusetts Mutual Life Insurance Co.* v. *JPMorgan Chase Bank, N.A., et al.*, commenced on or about April 8, 2011 in the United States District Court for the District of Massachusetts, Case No. 11-cv-30094.  This Securities Claim has not been settled.

q.  *Principal Life Insurance Company* v. *JPMorgan Chase & Co., et al.*, commenced on or about September 14, 2012 in New York State Supreme Court, Case No. 650615/2012. This Securities Claim has been settled.

r.  *Royal Park Investments SA/NV* v. *Merrill Lynch Pierce, Fenner & Smith, Incorporated, et al.*, commenced on or about December 14, 2012 in New York State Supreme Court, Case No. 652607/2012.  This Securities Claim has not been settled.

s.  *Sealink Funding Limited* v. *Bear Stearns & Co., Inc., et al.*, commenced on or about September 29, 2011 in New York State Supreme Court, Case No. 652681/2011.  This Securities Claim has been settled.

t.  *Stichting Pensioenfonds ABP* v. *JPMorgan Chase & Co., et al.*, commenced on or about December 7, 2011 in New York State Supreme Court, Case No. 653383/2011, and subsequently removed to the United States District Court, Case No. 12-cv-1398.  This Securities Claim has been settled.

32.     The Securities Claims for which JPMC is entitled to indemnification also include Securities Claims asserted by four additional entities based upon WaMu and/or Long Beach RMBS securitizations that were settled prior to the commencement of formal litigation, in each case on terms that are confidential:  (i) a large insurance company, (ii) a large bank, (iii) another insurance company, and (iv) a state pension system.

33.     All of the foregoing Securities Claims were asserted for the first time only after the commencement of the FDIC receivership on September 25, 2008, and all are based upon conduct that occurred in 2007 and earlier.

34.     All of the Securities Claims are based upon alleged pre-receivership "action or inaction" by WMB, its subsidiaries and/or their officers, directors employees or agents.

35.     WMB's books and records did not contain any provision for any of these Securities Claims.

36.     JPMC is entitled to indemnification under the P&A Agreement (i) with respect to Securities Claims that have been settled, for the settlement amounts paid to the claimant attributable to WaMu and Long Beach RMBS securitizations, (ii) with respect to Securities Claims that have not been settled, for all amounts for which JPMC may ultimately be liable or reasonably pay in connection with a settlement of claims attributable to WaMu and Long Beach securitizations, and (iii) for attorneys' fees and other costs and expenses incurred in defending such Securities Claims.

### C.     Tax Liabilities

37.     JPMC has been subject to claims made by, *inter alios*, the following taxing authorities seeking to recover alleged pre-receivership tax obligations of WMB:  the Alabama Department of Revenue ("Alabama"); the California Franchise Tax Board ("California"); the Delaware Division of Revenue ("Delaware"); the Michigan Department of Treasury ("Michigan"); the New Jersey Division of Taxation ("New Jersey"); the Louisiana Department of Revenue ("Louisiana");  the New York City Department of Finance ("New York City"); the New York State Department of Taxation and Finance ("New York State"); the Ohio Department of Taxation ("Ohio"); the City of Philadelphia Department of Revenue ("Philadelphia"); the Texas Comptroller of Public Accounts ("Texas"); the Commonwealth of Virginia Department of Taxation ("Virginia"); the Washington State Department of Revenue ("Washington"); the West Virginia State Tax Department ("West Virginia"); and the City of

Wilmington Department of Finance ("Wilmington") (collectively, the "Tax Claims"). The Tax Claims that are the subject of this action do not include the liability that JPMC incurred in defending and settling a claim by the Connecticut Department of Revenue Services ("Connecticut"), which is the subject of a separate, pending action by JPMC seeking indemnity from the FDIC, or any other amount subject to indemnification pursuant to that action. JPMC seeks indemnification here for the Tax Claims only insofar as they give rise to indemnifiable amounts not addressed in the actions seeking indemnification of amounts paid in settlement to Connecticut.

38.    No liability for any of these Tax Claims was reflected on WMB's books and records as of September 25, 2008. To the contrary, in certain instances, WMB's books and records reflected a receivable due from the relevant taxing authority – *i.e.*, an asset.

39.    None of the liabilities that are the subject of the Tax Claims was asserted against WMB by the applicable taxing authority prior to September 25, 2008. In many instances, the Tax Claim asserted against JPMC was the product of an audit that was conducted by the relevant taxing authority post-receivership.

40.    In response to notices requesting that the FDIC-Receiver indemnify JPMC for the Tax Claims, the FDIC-Receiver has either chosen not to respond or has asserted that the liability that is the subject of the Tax Claim was reflected on WMB's books and records. However, despite multiple requests that the FDIC-Receiver identify the books and records to which it refers, and where in such books and records any such liabilities are reflected, the FDIC has not done so.

41.     Under the terms of the P&A Agreement, JPMC is entitled to be indemnified for any liability it incurs on account of the Tax Claims, as well as for all costs and expenses it incurs in defending against those claims.

### D.     Other Claims for Which JPMC is Entitled to Indemnity

42.     JPMC has also been subject to numerous other liabilities of varying types for which it is entitled to indemnity under Article XII of the P&A Agreement.  To date, however, the FDIC has failed to indemnify JPMC for any of these liabilities despite requests that it do so.

43.     **American National Insurance Co.**  On or about February 16, 2009, American National Insurance Co. and others (the "ANICO Plaintiffs") brought an action against JPMC, among others, which was subsequently removed to federal court and transferred to the United States District Court for the District of Columbia.  The FDIC is also a defendant in this action.

44.     The ANICO Plaintiffs, who originally asserted claims in their capacity as bondholders of both WMI and WMB, have attempted to recover under a variety of legal theories relating to pre-receivership events that culminated in the FDIC being appointed Receiver for WMB and the transaction between the FDIC-Receiver and JPMC embodied in the P&A Agreement.  The ANICO Plaintiffs sought to assert claims against JPMC for, among other things, allegedly breaching a standstill agreement it had entered into with WMI, causing the FDIC to sell WMB's assets to it at an unfairly low price, and tortiously interfering with their contract rights by inducing WMB's breach of its bond obligations to them.  Although the ANICO Plaintiffs' claims have been narrowed as a result of decisions by the District Court and the Court of Appeals, the action continues.  JPMC is entitled to be indemnified for all of the costs and expenses of defending against the ANICO Plaintiffs' claims until they were narrowed,

and for the costs and expenses of defending against those claims thereafter to the extent they relate to WMB's pre-receivership conduct.

45.    **Brar.**  On or about April 13, 2010, Surinder K. Brar ("Brar") brought an action against JPMorgan Chase & Co. in the Superior Court of California alleging that, before the FDIC was appointed Receiver for WMB, WMB wrongfully transferred the funds in her account to another individual with the same name.

46.    Brar's claim against JPMC is based on alleged pre-receivership conduct by WMB and not based on any liabilities assumed by JPMC.  As of September 25, 2008, no liability for Brar's claim was reflected on WMB's books and records.

47.    The Brar action was settled on February 4, 2011.  JPMC is entitled to be indemnified under the P&A Agreement for the costs of defending and settling the Brar action.

48.    **Izzo.**  On or about July 21, 2011, Rafaella Izzo ("Izzo") brought an action against JPMorgan Chase & Co. in the United States District Court for the Southern District of New York, alleging that on September 9, 2008, just over two weeks before the receivership, she slipped and fell at a branch office of WMB.  On or about January 13, 2012, Izzo filed an additional complaint in the United States District Court for the District of Columbia based on her fall on September 9, 2008.  In this action, she named JPMC and the FDIC as defendants as "successors-in-interest" to WMB.

49.    Izzo's claim is based on alleged pre-receivership conduct by WMB and not based on any liabilities assumed by JPMC.  WMB's books and records as of September 25, 2008 reflected no liability for Izzo's claims.

50.    JPMC entered into a settlement agreement to resolve Izzo's claims.

-16-

51.     JPMC is entitled under the P&A Agreement to be indemnified for the costs of defending against and settling Izzo's claims.

52.     **Acedillo.** On or about February 21, 2013, Evangeline Acedillo ("Acedillo") brought an action against JPMC, among others, in the California Superior Court alleging that, prior to the P&A Agreement, WMB perpetrated a "Securitization Scheme" involving predatory lending practices and alleging that JPMC was the "successor[] in liability" to WMB.

53.     Acedillo's claim is based on alleged pre-receivership conduct and not based on any liabilities assumed by JPMC. Acedillo's claim was not asserted prior to September 25, 2008, and no liability for Acedillo's claims was reflected on WMB's books and records as of September 25, 2008.

54.     JPMC is entitled to be indemnified under the P&A Agreement for the fees and costs it has incurred and will continue to incur in defending against, and any liability it incurs on account of, Acedillo's claims.

55.     **McCrory.** On or about October 8, 2010, Charles McCrory ("McCrory") and others brought an action against JPMC, among others, in the California Superior Court alleging that, prior to the receivership, WMB had knowledge of, and provided assistance to, the fraudulent and unlawful activities of an investment fund operated by Defendant Stefan Wilson.

56.     McCory's complaint alleged that JPMC is the "successor by acquisition" to WMB.

57.     McCrory's claim is based on alleged pre-receivership conduct and not based on any liabilities assumed by JPMC. McCrory's claims were not asserted prior to

September 25, 2008, and no liability for McCrory's claims was reflected on WMB's books and records as of September 25, 2008.

58.     JPMC is entitled to be indemnified under the P&A Agreement for the fees and costs it incurred in defending against McCrory's claims.

59.     **Benson and Lowell.**  On or about November 5, 2009, Kimberly Benson brought an action in the United States District Court for the Northern District of California against JPMC, as alleged successor-in-interest to Washington Mutual, Inc., based on alleged pre-receivership conduct related to the fraudulent activities of a financial institution called Millennium Bank.  On or about November 23, 2009, John Alexander Lowell brought a similar action against JPMC based on the same alleged pre-receivership conduct.

60.     Benson's and Lowell's claims were not asserted until after September 25, 2008, and no liability for Benson's or Lowell's claims was reflected on WMB's books and records as of September 25, 2008.

61.     Benson's and Lowell's claims were dismissed by the District Court, and the dismissal was affirmed by the U.S. Court of Appeals for the Ninth Circuit on March 20, 2012.

62.     JPMC is entitled to be indemnified under the P&A Agreement for the substantial fees and costs it incurred in defending against Benson's and Lowell's claims.

63.     **Hollis.**  On or about March 23, 2012, Geoffrey and Sharon Hollis ("Hollis") brought a putative class action against JPMC in the United States District Court for the District of Massachusetts asserting claims substantially similar to those whose dismissal had been affirmed by the Ninth Circuit in the *Benson* and *Lowell* actions several days earlier.

-18-

64.     Hollis' claim is based on alleged pre-receivership conduct and not based on any liabilities assumed by JPMC.  Hollis' claims were not asserted until after September 25, 2008, and no liability for Hollis' claims was reflected on WMB's books and records as of September 25, 2008.

65.     JPMC is entitled to be indemnified under the P&A Agreement for the fees and costs it has incurred and will continue to incur in defending against, and any liability it incurs on account of, Hollis' claims.

66.     **Fees and Costs Relating to Government Investigations and Subpoenas.**  Various government agencies have conducted investigations into pre-receivership conduct by WMB, its parent WMI, its subsidiaries and/or their pre-receivership officers, directors and employees.  These investigations do not relate to JPMC's conduct.  In some instances, the investigating agencies have sought WMB documents from the FDIC, and the FDIC has directed those requests on to JPMC for JPMC to fulfill; in other instances, perhaps realizing that JPMC has custody of and maintains WMB's documents, these agencies have sought WMB documents directly from JPMC.

67.     JPMC has undertaken to respond to these often-extensive requests for WMB documents and in some cases has provided other discovery material relating to WMB, including testimony.  As a result, JPMC has incurred substantial fees and costs responding to document requests and other requests in these investigations.  In responding to these requests, JPMC has had to locate, review, and produce many millions of pages of documents.

68.     Under the P&A Agreement, JPMC agreed to maintain WMB's documents "for the joint benefit of the Receiver, the Corporation, and the Assuming Bank."  (P&A, § 6.3.)  Having custody of those documents, JPMC also agreed to take primary responsibility for

providing WMB documents in response to requests seeking WMB documents. (*Id.*) But that administrative obligation does not obviate the FDIC-Receiver's obligation to indemnify JPMC for costs stemming from matters for which indemnification is provided under the P&A Agreement, and fees and costs imposed on JPMC as a result of WMB's pre-receivership conduct are explicitly indemnifiable.

69.     Similarly, JPMC has also incurred substantial fees and costs in responding to the FDIC-Receiver's own requests to provide it WMB documents for use in lawsuits and investigations by the FDIC-Receiver. In the P&A Agreement, the FDIC-Receiver expressly agreed to "bear the cost" of complying with its requests. (P&A § 6.4.) These requests include, but are not limited to, requests in connection with *FDIC-Receiver* v. *LSI Appraisal, LLC*, pending in the U.S. District Court for the Central District of California, No. SACV11-706; *FDIC-Receiver* v. *CoreLogic Valuation Services, LLC*, pending in the U.S. District Court for the Central District of California, No. SACV11-704; *FDIC-Receiver* v. *Old Republic National Title Insurance Company*, pending in the U.S. District Court for the Southern District of Florida, No. 12-81172-CIV-ZLOCH; *FDIC-Receiver* v. *First American Title Insurance Company*, pending in the U.S. District Court for the Middle District of Florida, No. 8:12-cv-02245; *FDIC-Receiver* v. *Stewart Title Guaranty Company*, currently pending in the U.S. District Court for the Middle District of Florida, No. 8:12-cv-02244-EAK-TBM; the FDIC-Receiver's potential Washington Mutual Inc. fidelity bond claim as to C.I.P. Mortgage; and related actions.

70.     Under the terms of the P&A Agreement, JPMC is entitled to indemnity for the fees and costs it incurred in responding to these inquiries, requests and subpoenas.

71. **Loan Repurchases.** JPMC has additionally incurred fees and costs in responding to repurchase requests and related litigations with respect to loans originated by WMB or Long Beach prior to receivership.

72. In certain instances, JPMC has repurchased WMB- and/or Long Beach-originated loans, or made make-whole payments on such loans, based on breaches of WMB's representations and warranties in the mistaken belief that JPMC or one of its affiliates, rather than the FDIC-Receiver, bore the attendant repurchase liability.

73. Under the terms of the P&A Agreement, JPMC is entitled to be indemnified for the cost of repurchasing loans and for the fees and costs it has incurred and will continue to incur in responding to requests from purchasers of loans sold by WMB and/or Long Beach.

## CLAIMS FOR RELIEF

### Count One:
### Breach of Contract Against FDIC-Receiver

74. JPMC repeats, realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

75. Under the terms of the P&A Agreement, the FDIC-Receiver is obligated to indemnify JPMC for each of the matters alleged above.

76. The FDIC-Receiver has breached its obligations under the P&A Agreement by failing or refusing to indemnify JPMC as required by the terms of the P&A Agreement.

77. JPMC has been damaged in an amount to be proved at trial.

## Count Two:
## Breach of the Covenant of Good Faith and Fair Dealing Against FDIC-Receiver

78.     JPMC repeats, realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

79.     The P&A Agreement, like every contract, contains an implied covenant of good faith and fair dealing applicable to the FDIC-Receiver.

80.     By the conduct described above, the FDIC-Receiver has breached the covenant of good faith and fair dealing.

81.     JPMC has been damaged as a result.

## Count Three:
## Declaratory Judgment Against FDIC-Receiver

82.     JPMC repeats, realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

83.     As set forth above, the FDIC-Receiver has wrongly denied or refused to acknowledge its continuing indemnification obligations to JPMC under the P&A Agreement.

84.     There is thus an actual controversy between JPMC and the FDIC-Receiver concerning the scope of the FDIC-Receiver's indemnity obligations under the P&A Agreement that is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

85.     JPMC requests a declaratory judgment that the FDIC-Receiver is obligated under the P&A Agreement to indemnify JPMC for any further liabilities it may incur, including the fees and costs of defense, with respect to the each of the matters identified above.

## Count Four:
## Declaratory Judgment Against FDIC-Corporate

86.     JPMC repeats, realleges and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

87.     As set forth above, FDIC-Corporate is obligated to JPMC for the FDIC-Receiver's indemnification obligations under Article XII of the P&A Agreement to the extent the FDIC-Receiver fails to pay.

88.     JPMC requests a declaratory judgment that FDIC-Corporate is obligated to indemnify JPMC for all matters for which it is determined in this action that the FDIC-Receiver is obligated under Article XII of the P&A Agreement to indemnify JPMC to the extent the FDIC-Receiver fails to do so.

WHEREFORE, Defendant JPMC respectfully requests that this Court grant judgment:

I.     Awarding JPMC damages against the FDIC-Receiver in an amount to be proved at trial for the FDIC-Receiver's failure to honor its indemnification obligations under Article XII of the P&A Agreement;

II.     Issuing a declaration against the FDIC-Receiver as described above;

III.     Issuing a declaration against FDIC-Corporate as described above; and

IV.     Awarding interest and such additional relief to JPMC as the Court may deem just and proper.

Dated:   December 17, 2013                 Respectfully submitted,

Robert A. Sacks (D.D.C. Bar No. MI0069)
sacksr@sullcrom.com
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067
Telephone:  (310) 712-6600
Facsimile:  (310) 712-8800

Brent J. McIntosh (D.C. Bar No. 991470)
mcintoshb@sullcrom.com
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 293-6330

*Attorneys for Plaintiff*
*JPMorgan Chase Bank, N.A.*